UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JUL 26 PM 2: 24

CLERK

BY_____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No. 5:18-cv-122 |
| ) | |
| v. ) | |
| ) | |
| $5,000.00, MORE OR LESS, IN ) | |
| UNITED STATES CURRENCY ) | |
| ) | |
| Defendant in rem. ) | |

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

Plaintiff, the United States of America (the "United States"), by and through its attorney, Christina E. Nolan, United States Attorney for the District of Vermont, brings this complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

### NATURE OF THE ACTION

1.  This is a civil action *in rem* to forfeit and condemn to the use and benefit of the United States all right, title, and interest in the above-named defendant *in rem*, to wit, $5,000.00, more or less, in United States currency (the "Defendant Currency"), which is forfeitable pursuant to: (a) 21 U.S.C. § 881(a)(6) because it constitutes moneys furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate such an exchange; and (b) 18 U.S.C. § 981(a)(1)(C) because it constitutes proceeds derived from "specified unlawful activity" as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), namely, the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance.

## THE DEFENDANT IN REM

2. The Defendant Currency consists of a sum of United States currency totaling $5,000.00, more or less, which the Vermont State Police ("VSP") seized from Andre Marshall on February 21, 2018, at Rutland, Vermont, within the District of Vermont. At the time of seizure, the Defendant Currency was located on Marshall's person and consisted of bundled cash in the following denominations: 26 x $100, 1 x $50, 124 x $20, and 4 x $1.

3. On March 2, 2018, the Federal Bureau of Investigation ("FBI") adopted the Defendant Currency for forfeiture pursuant to 21 U.S.C. § 881(a)(6). Following adoption, the FBI converted the Defendant Currency to a bank check, which was released into the possession, custody, and control of the United States Marshals Service at Burlington, Vermont, within the District of Vermont. The United States Marshals Service subsequently deposited the funds in a government account for safekeeping pending forfeiture.

## JURISDICTION AND VENUE

4. The Court has subject-matter jurisdiction over this civil action *in rem* pursuant to 28 U.S.C. §§ 1345 and 1355(a) because this is a civil action commenced by the United States for the enforcement of a forfeiture incurred under an Act of Congress.

5. The Court has *in rem* jurisdiction over the Defendant Currency pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Defendant Currency was seized in this district. In accordance with Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States requests that the Clerk of Court issue a warrant to arrest the Defendant Currency upon the filing of this complaint.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Defendant Currency was seized in this district.

## STATEMENT OF FACTS

7.  The factual allegations set forth in this complaint are alleged upon information and belief and based upon evidence obtained by state and federal law enforcement personnel, investigative reports prepared by such personnel, and information shared by and between such personnel in the course of investigating the conduct giving rise to forfeiture.

### *Discovery of the Defendant Currency and Evidence of Its Unlawful Nature*

8.  On February 21, 2018, at approximately 12:15 a.m., a VSP Sergeant (Sgt. #1) was traveling north on US Route 7 in Rutland, Vermont, when he observed a white Cadillac Escalade bearing New York registration 2NICCE (the "Escalade") cross the highway centerline multiple times in violation of Vermont law.

9.  Sgt. #1 stopped the Escalade and made contact with its occupants.

10. The driver of the Escalade produced a Vermont driver's license that identified him as Andre Marshall of Brandon, Vermont. Marshall was accompanied by a single passenger, who was later identified as Robinson Jeanty of Brooklyn, New York.

11. While making contact with Marshall and Jeanty, Sgt. #1 detected an odor of burnt marijuana emanating from within the Escalade.

12. Sgt. #1 was soon joined by another VSP Sergeant ("Sgt. #2"), who likewise detected an odor of burnt marijuana emanating from within the Escalade. Sgt. #2 also later detected an odor of raw marijuana emanating from the Escalade.

13. Marshall stated that he and Jeanty were traveling from Albany, New York, to Marshall's home in Brandon, Vermont, but he later clarified that he and Jeanty had come from Brooklyn, New York, and had made a stop in Albany. He and Jeanty both stated that they had no specific plans for their time in Vermont, and Jeanty further explained that he had planned to return to Brooklyn later that same day, though he did not know how he would get to Brooklyn.

14. While making contact with Marshall and Jeanty, Sgt. #2 observed that Marshall's hands appeared to be trembling and that Marshall's respiration appeared elevated.

15. Upon visually scanning the interior of the Escalade from his position outside of the vehicle, Sgt. #2 observed the following in plain sight: a green leafy substance on the driver's side floorboard of the vehicle; approximately 10 air fresheners hanging from the headliner and steering column of the vehicle; 4 cellular phones; and what appeared to be a video-recording device attached to the vehicle's rear-view mirror. He further observed a small, green, blinking light emitting from the video-recording device, which he understood to be an indication that the device was recording during the traffic stop.

16. When questioned about the odor of burnt marijuana emanating from the Escalade, Marshall stated that he had smoked marijuana in the vehicle 3 hours prior to being stopped.

17. When questioned as to whether he was in possession of any marijuana, Marshall initially stated that he was not in possession of any marijuana, but he subsequently admitted that he was in possession of approximately 1 ounce of marijuana and that such marijuana was located in the center console of the Escalade.

18. Sgt. #2 thereafter sought and obtained Marshall's consent to search his person.

19. In the course of searching Marshall's person, Sgt. #2 found a total of $5,134.00 in United States currency (the Defendant Currency). A bundle containing $2,483.00 comprised of the following denominations was found in the left-hand pocket of Marshall's pants: 124 x $20 and 3 x $1. Another bundle containing $2,651.00 comprised of the following denominations was found in the right-hand pocket of Marshall's pants: 26 x $100, 1 x $50, and 1 x $1.

20. Marshall said he earned the Defendant Currency working as a music manager.

21. Upon completing the search of Marshall's person, Sgt. #2 sought and obtained

4

Marshall's consent to search the Escalade.

22. Prior to searching the Escalade, Sgt. #2 asked Jeanty to exit the vehicle. He also sought and obtained Jeanty's consent to search his person.

23. In the course of searching Jeanty's person, Sgt. #2 found a total of $4,350.00 in United States currency. A bundle containing $1,830.00 comprised of the following denominations was found in the left-hand pocket of Jeanty's pants: 19 x $50, 43 x $20, and 2 x $10. Another bundle containing $2,520.00 comprised of the following denominations was found in the right-hand pocket of Jeanty's pants: 126 x $20.

24. Jeanty said he won the money at a casino in Queens, New York, earlier that day.

25. During his search of the Escalade, Sgt. #2 found, among other things: 1.17 ounces (33.1 grams) of marijuana; four cellular phones; and several hand tools of the variety commonly used to remove the interior trim of automobiles.

26. During his search of the Escalade, Sgt. #2 observed, among other things, several nuts and bolts scattered throughout the vehicle and a section of carpeting in the rear-seat area of the vehicle that appeared to have been cut along a seam and pulled back. Upon pulling back this section of carpeting, he observed that several nuts were missing from the rear seat mounts.

27. By the time of the above-referenced search, a Rutland City Police Department K9 unit had arrived at the scene of the traffic stop. The K9 unit consisted of a police officer and a police dog that was trained to detect and alert upon heroin, cocaine, crack, methamphetamine, and ecstasy. The police dog was also "proofed" on United States currency, meaning that the dog would not alert on United States currency unless the currency had recently been in contact with one or more of the above-referenced narcotics. The police dog was not trained to detect or alert upon marijuana or United States currency that had been in contact with marijuana.

28. Upon being deployed in the front-seat area of the Escalade, the police dog alerted on an empty black plastic bag that was located inside the driver's door pocket, thereby indicating that heroin, cocaine, crack, methamphetamine, and/or ecstasy had recently been concealed in, or had recently come in contact with, the black plastic bag.

29. Upon being deployed in the rear-seat area of the Escalade, the police dog alerted on the area in which the carpeting appeared to have been cut and pulled back, thereby indicating that heroin, cocaine, crack, methamphetamine, and/or ecstasy had recently been concealed in, or had recently come in contact with, this area of the vehicle. Despite repeated commands to search the entirety of the back-seat area for drugs, the police dog repeatedly returned to, and alerted upon, the above-referenced area in which the carpeting had been disturbed.

30. Based on the foregoing facts and other evidence of criminal activity, Sgt. #2 seized the Escalade in anticipation of seeking and obtaining a search warrant to more thoroughly search the vehicle and its contents for evidence of criminal violations involving the possession and/or sale and distribution of controlled substances. He also seized the $5,134.00 found on Marshall's person, the $4,350.00 found on Jeanty's person, and the 4 cellular phones.

31. Sgts. #1 and #2 and the Rutland City Police Department K9 unit thereafter returned to the VSP barracks in Rutland, Vermont, where, among other things, each bundle of money seized from Marshall and Jeanty (including, but not limited to, the Defendant Currency) was hidden in a separate location within a drug-free office space that the police dog then swept for drugs. The dog detected and alerted upon each hidden bundle of money, thereby indicating that each bundle contained currency that had recently come in contact with heroin, cocaine, crack, methamphetamine, and/or ecstasy.

32. Based on the foregoing facts and other evidence of criminal activity, Sgt. #2 sought, obtained, and executed a search warrant authorizing him to perform a more thorough search of the Escalade for evidence of criminal violations involving the possession and/or sale and distribution of controlled substances.

33. During his second search of the Escalade, Sgt. #2 located, among other things, a 32-gigabyte Falcon Zero Secure Digital ("SD") card in the vehicle's video-recording device.

34. Based on the foregoing facts and other evidence of criminal activity, Sgt. #2 sought, obtained, and executed a search warrant authorizing the search of the Falcon Zero SD card for evidence of criminal violations involving the possession and/or sale and distribution of controlled substances.

35. During his search of the Falcon Zero SD card, Sgt. #2 located more than one hundred audio/video recordings captured by the video-recording system within the Escalade, including a number of recordings captured during the traffic stop on February 21, 2018.

36. One of the audio/video recordings captured at 12:22 a.m. on February 21, 2018 (*i.e.,* approximately 7 minutes into the traffic stop), depicts a private conversation had between Marshall and Jeanty in the Escalade after Sgt. #1 returned to his patrol car to run a Department of Motor Vehicles check on Marshall's driver's license. The recording captured Marshall directing Jeanty to "take some more, take another stack." The recording further captured Jeanty referring to "the first stack you gave me . . .," and Marshall ultimately telling Jeanty: "you got, like, four thousand . . . ." Such and other recorded remarks are consistent with Jeanty taking possession of $4,000.00, more or less, from Marshall, at Marshall's behest, so Marshall would not be found to be in possession of such money if searched by Sgt. #1.

7

37. The $4,350.00 in United States currency that was found on Jeanty's person is the cash that Marshall surreptitiously provided to Jeanty during the car stop and which Jeanty falsely claimed to have won at a casino in Queens, New York, earlier that day.

38. The high number of small bills comprising the Defendant Currency and the currency found upon Jeanty's person is consistent with proceeds deriving from the street-level sale of controlled substances.

39. Marshall and Jeanty both have lengthy criminal histories.

40. Marshall's criminal history includes a number of convictions for drug-related offenses committed in and around Albany, New York, including convictions for felony sale of a narcotic, felony possession of a narcotic, and felony possession of a narcotic with intent to sell.

41. Marshall was charged criminally by the State of Vermont in connection with his unlawful possession of the 1.17 ounces (33.1 grams) of marijuana found in the Escalade.

### *Administrative Forfeiture Proceedings*

42. On or about March 2, 2018, Special Agents with the FBI adopted the $9,484.00 in United States currency seized from Marshall and Jeanty (including the Defendant Currency) for forfeiture pursuant to 21 U.S.C. § 881(a)(6).

43. On or about March 23, 2018, the FBI commenced administrative forfeiture proceedings against the $9,484.00 in United States currency by timely issuing to Marshall and to Jeanty a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings.

44. On or about April 27, 3018, Marshall filed an administrative claim in which he asserted an interest in the $9,484.00 subject to forfeiture. More specifically, Marshall claimed that the $5,134.00 that had been seized from him included $5,000 that he had borrowed from his parents (the Defendant Currency). Marshall did not assert any interest in the remaining balance of the seized funds that are subject to forfeiture.

## FIRST CLAIM FOR RELIEF
## (Forfeiture Pursuant to 21 U.S.C. § 881(a)(6))

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 above as if fully set forth herein.

46. Pursuant 21 U.S.C. § 881(a)(6), all moneys furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate such an exchange, shall be subject to forfeiture to the United States and no property rights shall exist in such moneys or proceeds.

47. Heroin, ecstasy, and marijuana are Schedule I controlled substances under the Controlled Substances Act. Cocaine, crack, and methamphetamine are Schedule II controlled substances under the Controlled Substances Act.

48. Pursuant to 18 U.S.C. § 984(a)(2), in any forfeiture action *in rem* in which the subject property is cash, any identical property found in the same place as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture, so long as the action to forfeit such identical property is commenced within one year from the date of the offense that is the basis for the forfeiture.

49. The Defendant Currency constitutes, in whole or in part, moneys furnished or intended to be furnished by a person in exchange for a controlled substance in violation of the Controlled Substances Act, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate such an exchange.

50. Accordingly, all right, title, and interest in the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 984(a)(2).

## SECOND CLAIM FOR RELIEF
### (Forfeiture Pursuant to 18 U.S.C. § 981(a)(1)(C))

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 above as if fully set forth herein.

52. Pursuant to 18 U.S.C. § 981(a)(1)(C), any personal property that constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity," as that term is defined in 18 U.S.C. § 1956(c)(7), is subject to forfeiture to the United States.

53. Pursuant to 18 U.S.C. § 1956(c)(7)(A), the term "specified unlawful activity" includes any act or activity constituting an offense listed in 18 U.S.C. § 1961(1), except an act that is indictable under Subchapter II of Chapter 53 of Title 31 of the U.S. Code.  This definition of "specified unlawful activity" includes the offenses listed in 18 U.S.C. § 1961(1)(D), including the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance.

54. Heroin, ecstasy, and marijuana are Schedule I controlled substances under the Controlled Substances Act.  Cocaine, crack, and methamphetamine are Schedule II controlled substances under the Controlled Substances Act.

55. Pursuant to 18 U.S.C. § 984(a)(2), in any forfeiture action *in rem* in which the subject property is cash, any identical property found in the same place as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture, so long as the action to forfeit such identical property is commenced within 1 year from the date of the offense that is the basis for the forfeiture.

56. The Defendant Currency constitutes or is derived from, in whole or in part, proceeds traceable to an offense constituting "specified unlawful activity," as defined in 18

U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), namely, the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance.

57. Accordingly, all right, title, and interest in the Defendant Currency is subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 984(a), 1956(c)(7), and 1961(1)(D).

## RELIEF REQUESTED

WHEREFORE, the United States respectfully requests that: (1) due notice be provided to all parties known or believed to have an in interest in, or right against, the Defendant Currency, so that such parties may appear and show cause why forfeiture of the Defendant Currency should not be decreed; (2) all right, title, and interest in the Defendant Currency be forfeited and condemned to the use and benefit of the United States; (3) the United States be awarded its costs and disbursements in this action; and (4) the United States be granted such other and further relief as the Court deems just and proper.

Dated at Burlington, in the District of Vermont, this 26th day of July, 2018.

Respectfully submitted,

CHRISTINA E. NOLAN
United States Attorney

By: *[signature]*
BENJAMIN WEATHERS-LOWIN
Assistant United States Attorney
United States Attorney's Office
P.O. Box 570
Burlington, VT 05402-0570
(802) 951-6725
Ben.Weathers-Lowin@usdoj.gov

*Attorney for Plaintiff*

## VERIFICATION

I, Jeffrey Stephenson, a Task Force Officer with the FBI, hereby verify under penalty of perjury that I have read the foregoing complaint and that the contents thereof are true and correct to the best of my knowledge, information, and belief.

Dated at Burlington, in the District of Vermont, this 26th day of July, 2018.

_____
JEFFREY STEPHENSON
Task Force Officer, FBI

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

**DEFENDANTS**
$5,000.00, MORE OR LESS, IN UNITED STATES CURRENCY

(b) County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Benjamin Weathers-Lowin, AUSA
U.S. Attorney's Office, P.O. Box 570, Burlington, VT 05402-0570

Attorneys *(If Known)*
Matthew Hart, Esq.        (Attorney for Claimant Andre Marshall)
The Law Offices of Matthew Hart, Esq., 1085 US-4 E Suite 1-B, Rutland, VT 05701

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice / ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 220 Foreclosure | ☐ 441 Voting | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / **Habeas Corpus:** | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | / ☐ 555 Prison Condition | | | |
| | ☐ 448 Education / ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

RECEIVED BURLINGTON JUL 26 2018 CLERK'S OFFICE U.S. DISTRICT COURT

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district *(specify)*
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
21 U.S.C. § 881(a)(6); 18 U.S.C. § 981(a)(l)(C)
Brief description of cause:
Forfeiture of an in rem defendant as money derived from, or involved in, illegal drug-related activities

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
**DEMAND $** 5,000.00 (forfeiture)
CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: 07/26/2018
SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**
RECEIPT # N/A   AMOUNT _____   APPLYING IFP _____   JUDGE 1013   MAG. JUDGE _____

5:18-cv-122